UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------
In re:

| | |
|---|---|
| THOMAS E. ZEBROWSKI and<br>MARY ELLEN ZEBROWSKI, | Chapter 7<br>Case No.: 11-10195 |
| Debtors. | |

---------------------------------------------------------
CHRISTIAN H. DRIBUSCH, Chapter 7 Trustee,

| | |
|---|---|
| Plaintiff, | |
| v. | Adv. Pro. No.: 11-90088 |
| THOMAS E. ZEBROWSKI and<br>MARY ELLEN ZEBROWSKI, | |
| Defendants. | |

---------------------------------------------------------
APPEARANCES:

| | |
|---|---|
| WHITEMAN, OSTERMAN & HANNA, LLP<br>*Attorneys for Plaintiff*<br>One Commerce Plaza<br>Albany, NY 12260 | CHRISTIAN H. DRIBUSCH, ESQ. |
| HIGGINS, ROBERTS, BEYERL & COEN, P.C.<br>*Attorneys for Defendants*<br>1430 Balltown Rd.<br>Schenectady, NY 12309-4332 | MICHAEL E. BASILE, ESQ. |

Honorable Robert E. Littlefield, Jr., Chief United States Bankruptcy Judge

**MEMORANDUM-DECISION AND ORDER**

Before the court is an adversary proceeding commenced by the chapter 7 trustee,

Christian Dribusch (the "Trustee"), against Thomas E. Zebrowski and Mary Ellen Zebrowski

(the "Debtors") seeking a denial of their discharge pursuant to 11 U.S.C. § 727(a)(4)(A).[1] For

---
[1] Unless otherwise noted, all statutory references are to Title 11, United States Code, and all rule references are to the Federal Rules of Bankruptcy Procedure.

1

the reasons that follow, the court finds in favor of the Debtors and dismisses the Complaint. Pursuant to Rule 7052, this Memorandum-Decision and Order sets forth the court's findings of fact and conclusions of law.

## JURISDICTION

This is a core proceeding within the court's jurisdiction pursuant to 28 U.S.C. §§ 157(a), (b)(1) and (b)(2)(J) and 1334(b).

## FACTS

The following facts are derived from the Joint Stipulation of Facts filed with the parties' pre-trial submissions ("Joint Stip.," ECF No. 15) and the testimony elicited in the trial of this matter.[2] The Debtors filed a voluntary petition, related schedules, and statements for relief under chapter 7 of the Bankruptcy Code on January 28, 2011 (collectively, the "Petition"). The Debtors are both college graduates, and Mrs. Zebrowski holds a graduate degree. (Tr. at 9:41 a.m.; 10:14 a.m.) The Debtors were represented by counsel throughout these bankruptcy proceedings. On March 7, 2011, the Trustee conducted the initial meeting of creditors pursuant to § 341 and examined the Debtors (the "§ 341 Meeting"). The § 341 Meeting was adjourned several times.

This case was selected by the United States trustee for an audit of the Debtors' Petition and other information filed by the Debtors in their case in accordance with the Debtor Audit Standards (71 Fed. Reg. 58005 (Oct. 2, 2006)), established under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Tronconi, Segarra & Associates, LLP performed the audit. (Joint Stip. ¶ 2.) In connection with the audit, the Debtors executed an affidavit of non-ownership dated April 4, 2011 (the "Affidavit"), declaring that:

---

[2] The parties did not elect and the court did not direct the parties to obtain a transcript of the proceeding. The testimony referenced in this decision is based upon the court's review of the electronic recording of the trial.

> [T]hey do not now own and have not previously owned in the two years prior to the filing of the petition . . . a 2007 Trailer, VIN #4TCSS11267H121266.

(Joint Stip. ¶¶ 3-4.) A Report of Debtor Audit was filed on April 13, 2011, indicating that no material misstatements were made by the Debtors. (Case No. 11-10195, ECF No. 22.) Meanwhile, Debtor Thomas Zebrowski had in fact owned the 2007 trailer referenced in the Affidavit (the "Trailer") within two years of the filing of the Petition. (Joint Stip. ¶ 5.) Mr. Zebrowski signed a registration document transferring the trailer to Ernest A. Verni on December 10, 2009. (Joint Stip. ¶ 6.)

Question 10 on the Statement of Financial Affairs filed with the Petition directs the Debtors to "[l]ist all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case." (Case No. 11-10195, ECF No. 1 (emphasis in original).) In response to Question 10, the Debtors answered, "None." The Debtors amended their schedules on five occasions, twice to add creditors (Case No. 11-10195, ECF Nos. 11, 15), once to claim an exemption (Case No. 11-10195, ECF No. 32), and twice to disclose additional assets (Case No. 11-10195, ECF Nos. 32, 36). No amendments to the Petition were made with respect to the Trailer.

The Trustee commenced this adversary proceeding with the filing of a complaint on September 7, 2011. The Complaint seeks a denial of the Debtors' discharge based upon the false oath contained in the Affidavit. On October 6, 2011, the Debtors filed an answer denying the allegations in the Complaint and asserting four affirmative defenses. A trial in this proceeding was held on May 22, 2012. The Trustee called the Debtors and Mr. Verni as witnesses. Mr. Zebrowski also testified on his own behalf. The only document admitted into evidence was the Affidavit. (Pl.'s Ex. A.)

3

The Trailer was originally purchased by Mr. Zebrowski for recreational purposes to transport snowmobiles. (Tr. at 10:16 a.m.) The Trailer was approximately 20 feet by 18 feet and had two wheels. (Tr. at 10:30 a.m.) Mrs. Zebrowski never had an ownership interest in the Trailer. (Tr. at 10:24 a.m.) Mr. Zebrowski gifted the Trailer to Mr. Verni in December 2009. (Tr. at 9:40 a.m.) Mrs. Zebrowski testified that she knew the Trailer belonged to her husband, Thomas Zebrowski, before it was transferred to Mr. Verni. (Tr. at 10:16 a.m.)

The registration document transferring the Trailer to Mr. Verni was signed on December 10, 2009 (Joint Stip. ¶ 6), but it was not filed with the New York State Department of Motor Vehicles until July 2010. (Tr. at 10:43 a.m.-10:44 a.m.) Mr. Zebrowski did not use the Trailer after December 10, 2009. (Tr. at 10:44 a.m.) Mr. Verni used the Trailer to transport electrical supplies to projects while working for Empire Industrial Solutions, Inc. ("EIS"). (Tr. at 9:40 a.m.). EIS was an electrical supply distributor owned by Mrs. Zebrowski. (Tr. at 9:40- 9:41 a.m.) The testimony was unclear as to whether Mr. Verni was an employee of EIS or an independent contractor. (Tr. at 10:02-10:03 a.m.; 10:25 a.m.) He did, however, have autonomy within the company and worked predominantly in sales. (Tr. at 10:02 a.m.; 10:15 a.m.; 10:25 a.m.)

Mr. Zebrowski had no ownership interest in EIS. (Tr. at 10:02 a.m.) His role in EIS was limited to assisting his wife in setting up the business and obtaining a Woman's Owned Business Certificate for the company. (Tr. at 9:57 a.m.) Although Mr. Zebrowski did not work for EIS, his office was located in the same building as EIS next to Mr. Verni's office. (Tr. at 9:58 a.m.) The Trailer was stored on EIS's premises. (Tr. at 9:58 a.m.; 10:32 a.m.)

Although Mr. Verni used the Trailer for his work with EIS, he was not required to do so. (Tr. at 10:03 a.m.) Mr. Zebrowski never used the Trailer once it was transferred to Mr. Verni,

nor did he ever direct Mr. Verni on where or how to use the Trailer.  (Tr. at 10:04 a.m.)  Mr. Zebrowski received no money for the Trailer from Mr. Verni, nor did Mr. Verni pay anyone money on Mr. Zebrowski's behalf.  (Tr. at 10:04 a.m.)

Over the years, Mr. Zebrowski's parents gifted him money to assist with his business ventures.  (Tr. at 9:42 a.m.; 10:17 a.m.)  At one point, Mr. Verni went to them for additional monies for one of their business plans, which upset Mr. Zebrowski.  (Tr. at 9:44-9:45 a.m.)  After EIS ceased doing business and Mr. Verni was no longer using the Trailer, Mr. Zebrowski suggested it be gifted to his mother, Constance Zebrowski.  (Tr. at 9:45 a.m.)  Mr. Verni signed the registration card for the Trailer as transferor and left the transferee blank and delivered it to Mr. Zebrowski.  (Tr. at 10:34 a.m.)  The Trailer was transferred to Mr. Zebrowski's mother for no consideration on October 22, 2010.  (Tr. at 10:34 a.m.; Joint Stip. ¶¶ 7-8.)

The Trailer needed to be moved from EIS's premises when EIS was facing eviction in the beginning of January 2011.  (Tr. at 9:59 a.m.)  Mr. Zebrowski contacted an acquaintance from snowmobiling, and told him they had a trailer they did not have any use for.  (Tr. at 10:06 a.m.)  Initially, Mr. Zebrowski thought this discussion took place during the time Mr. Verni owned the Trailer, (Tr. at 10:06 a.m.), but later said it might have been after it was transferred to his mother.  (Tr. at 10:06 a.m.)  When the Trailer was ultimately sold in early January 2011 for $1,200, the sale proceeds were turned over to Mr. Zebrowski's mother.  (Tr. at 9:46 a.m.-9:47 a.m.)  No monies went to Mr. Zebrowski (Tr. at 10:06 a.m.) or Mrs. Zebrowski (Tr. at 10:24 a.m.).  Later that month, the Debtors filed their bankruptcy petition.

When the Affidavit was presented to Mr. Zebrowski to read from at trial, he indicated he left his glasses at home.  (Tr. at 10:00 a.m.; 10:07 a.m.)  However, he testified that he had read it so many times he could see it.  (Tr. at 10:00 a.m.; 10:07 a.m.)

5

Mr. and Mrs. Zebrowski signed the Affidavit at their bankruptcy attorney's office. (Tr. at 10:00 a.m.; 10:19 a.m.) They both met with their attorney's assistant to sign the Affidavit. (Tr. at 10:00 a.m.; 10:19 a.m.) The Debtors both admitted to going over the Affidavit prior to signing it, but neither reviewed any records before signing it. (Tr. at 10:00 a.m.; 10:24 a.m.)

Mr. Zebrowski did not have his glasses when he signed the Affidavit, but indicated that "what stuck out [on the Affidavit] was the Trailer and the 1997 Mercedes." (Tr. at 10:08 a.m.) He explained that, "I thought it was an older trailer before the other one . . . Mercedes, I knew we got rid of that." (Tr. at 10:08 a.m.) Mr. Zebrowski traded in what he referred to as the "old trailer" in 2004 or 2005, and he alleges he thought the one listed was the "old" one. (Tr. at 10:09 a.m.) He also believed that his attorney told him nothing was considered an asset unless it was worth at least $5,000. (Tr. at 10:08 a.m.; 10:10 a.m.)

Mrs. Zebrowski did not recall asking Mr. Zebrowski about the Trailer at the time they signed the Affidavit. (Tr. at 10:20 a.m.) According to Mrs. Zebrowski, she did not advise Mr. Zebrowski about whether he should sign the Affidavit, and he did not give her any advice. (Tr. at 10:25 a.m.) Mrs. Zebrowski indicated she did not have any documentation or memory of the date they filed their bankruptcy petition when she signed the Affidavit. She also testified that she did not have any documentation or memory of the date her husband transferred the Trailer, when she signed the Affidavit. (Tr. at 10:24 a.m.)

In response to a question from her attorney, Mrs. Zebrowski indicated that at the time she signed the Affidavit, she was not aware that it was false with respect to her husband. (Tr. at 10:25 a.m.) When asked by her attorney if she signed the Affidavit with any intent to defraud, delay, or hinder anyone in her bankruptcy proceeding, she responded, "absolutely not." (Tr. at 10:26 a.m.) Mrs. Zebrowski also confirmed that she believed that the Affidavit was true and

6

accurate with respect to her. (Tr. at 10:26 a.m.) When Mr. Zebrowski was asked by his attorney if he believed what he signed to be true at the time, he responded, "[o]f course," and that he did not have any intent to defraud. (Tr. at 10:10 a.m.)

Mrs. Zebrowski indicated she recalled attending the meeting of creditors and testifying that she had reviewed her petition and understood the questions asked of her in the petition to the best of her knowledge. (Tr. at 10:18 a.m.) When Mrs. Zebrowski was asked about signing amended schedules, she stated she signed a lot of things and that she "reviewed documents to the extent they made sense to me." (Tr. at 10:21-10:22 a.m.) She did not have any specific recollection about particular amended schedules referenced by their filing dates by the Trustee.

At the conclusion of the Plaintiff's case, counsel for Mrs. Zebrowski orally moved to dismiss the Complaint against Mrs. Zebrowski arguing that there was no proof presented establishing that any false statements were made by her, as she never owned the Trailer. The court reserved decision on the motion and took the matter under advisement.

## ARGUMENT

The Trustee argues that the Debtors' discharge should be denied on the ground that they knowingly and fraudulently executed the Affidavit. In the alternative, he contends the Debtors signed the Affidavit with a reckless indifference to the truth.

The Debtors assert that the Trustee failed to prove they had the necessary fraudulent intent when signing the Affidavit. Additionally, the Debtors argue there was no reason for them to not be truthful when executing the Affidavit as the trailer was of *de minimus* value, ownership records were public, and the risk of being denied a discharge would be devastating.

7

**DISCUSSION**

The court shall grant the debtor a discharge, unless "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A). A denial of discharge imposes an "extreme penalty for wrongdoing." *State Bank of India v. Chalasani (In re Chalasani),* 92 F.3d 1300, 1310 (2d Cir. 1996). It is the "death penalty of bankruptcy." *Levine v. Raymonda* (*In re Raymonda)*, No. 99-13523, Adv. Pro. No. 99-91199, slip op. at 4 (Bankr. N.D.N.Y. Feb. 9, 2001). As a result, the provisions of § 727 are construed strictly against the objecting party and liberally in favor of the debtor. *In re Chalasani,* 92 F.3d at 1310. It is well-settled that the party objecting to the granting of a discharge bears the burden of persuasion by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 289 (1991). The denial of a discharge under § 727(a)(4)(A) requires that the plaintiff establish that: (1) the debtor made a statement under oath; (2) such statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy. *Levine v. Hormovitis (In re Hormovitis),* No. 07-11276, Adv. Pro. No. 07-90212, slip op. at 6 (Bankr. N.D.N.Y. Apr. 27, 2009) (citations omitted). Once the moving part meets its initial burden to produce evidence of a false statement, the burden of production shifts to the debtor to produce a credible explanation for the false statement. *Adler v. Charming Trading Co. (In re Adler)*, 395 B.R. 827, 841 (E.D.N.Y. 2008) (citation omitted). The overall burden, however, remains with the moving party. *Id.*

The Debtors both signed the Affidavit under the penalty of perjury indicating that they had not owned the Trailer within two years of filing the Petition, when in fact Mr. Zebrowski did

8

own the Trailer within the specified time period. Thus, the Debtors made a false statement under oath satisfying the first two factors.

"'[A] false oath is material, and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate or concerns the discovery of assets, business dealings or the existence or disposition of his property.'" *O'Connell v. DeMartino (In re DeMartino),* 448 B.R. 122, 129 (Bankr. E.D.N.Y. 2011) (quoting *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 618 (11th Cir. 1984)). "'Materiality does not require a showing that the creditors were prejudiced by the false statement.'" *Carlucci & Legum v. Murray* (*In re Murray*), 249 B.R. 223, 229 (E.D.N.Y. 2000) (quoting *In re Robinson,* 506 F.2d 1184, 1188 (2d Cir. 1974)). The requirement of materiality was judicially created to ensure that debtors are not denied discharge for inconsequential or technical misstatements. *In re Murray,* 249 B.R. at 228 (citations omitted). Here, the Affidavit is related to the disposition of property and a potential fraudulent conveyance. Thus, the fifth element of § 727(a)(4)(A) is also met.

The central questions presented in this case are whether the Debtors knew the Affidavit was false and whether they intended to deceive anyone. With respect to the knowledge element, a "statement is considered to have been made with knowledge of its falsity if it was known by the debtor to be false, made without belief in its truth, or made with reckless disregard for the truth." *Montey Corp. v. Maletta (In re Maletta)*, 159 B.R. 108, 112 (Bankr. D.Conn 1993) (citation omitted). A discharge may not be denied under § 727(a)(4)(A) where the untruth was the result of mistake or inadvertence. *First Am. Bank of New York v. Bodenstein* (*In re Bodenstein*), 168 B.R. 23, 32 (Bankr. E.D.N.Y. 1994). A debtor's education, business experience, and reliance on counsel may be taken into consideration when evaluating a debtor's knowledge of a false statement. *In re Maletta*, 159 B.R. at 112. Intent to defraud involves a

9

material representation that you know to be false, or, what amount to the same thing, an omission that you know will create an erroneous impression." *Keeney v. Smith* (*In re Keeney)*, 227 F.3d 679, 685-86 (6th Cir. 2000) (quoting *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998)). An omission or misstatement of material information made with a "'reckless indifference to the truth'" may suffice to establish fraudulent intent. *DeAngelis v. Williams (In re Williams)*, 2012 WL 3564027, at *8 (Bankr. M.D.Pa. Aug. 17, 2012) (quoting *In re Keeney*, 227 F.3d at 685-86).

The Trustee dedicated eleven of the sixteen minutes of the direct examination of Mr. Zebrowski to issues other than the Affidavit. With respect to the circumstances surrounding the Debtors' execution of the Affidavit, the record reveals that the Debtors signed it at their attorney's office, but not with their attorney present. The Affidavit was reviewed by the Debtors before they signed it, but they did not look over any records. Mr. Zebrowski indicated he did not have his glasses when he signed the Affidavit, but that the Trailer and 1997 Mercedes stood out on the Affidavit. He offered that he thought it was an older trailer, and he knew they disposed of the Mercedes. He also indicated that, in any event, he was under the belief that the Trustee was only concerned with assets worth at least $5,000. On cross-examination by his attorney with respect to the Affidavit, Mr. Zebrowski indicated he did not sign anything he believed to be false, and he had no intent to defraud.

Mr. Zebrowski admitted he only skimmed the Petition prior to signing it because of its size. Additionally, his responses to the Trustee's questions with respect to the § 341 meeting and continuations thereof, and the amendments to the Petition were somewhat incredible as he could recall almost nothing. The Complaint, however, is based only upon the false oath contained in the Affidavit and not omissions in the Petition or at the § 341 meeting. Although Mr. Zebrowski displayed a cavalier, casual attitude towards the importance of the accuracy of the Petition, the

10

court cannot draw the same conclusion with respect to the Affidavit. It is unknown whether the Debtors knew or understood what they were signing, or if anyone explained the purpose or importance of the Affidavit. It seems strained that Mr. Zebrowski did not recall, at the time he signed the Affidavit, the Trailer that (1) he helped his mother sell four months earlier, the same month he filed for bankruptcy protection; (2) until four months before, he saw on a regular basis at EIS; and (3) he previously owned and conveyed to Mr. Verni approximately 17 months earlier. However, Mr. Zebrowski was not questioned on the proximity of these events to the signing of the Affidavit. No testimony was elicited contradicting or discrediting Mr. Zebrowski's justifications for the erroneous statement in the Affidavit or rebutting his self-serving statements. Based upon the evidence before it, the court cannot conclude that Mr. Zebrowski possessed the requisite knowledge when he signed the Affidavit.

Unlike Mr. Zebrowski, Mrs. Zebrowski never had an ownership interest in the Trailer. Thus, the Affidavit is true as to Mrs. Zebrowski's ownership interest in the Trailer. Additionally, Mrs. Zebrowski's testimony that she believed the Affidavit to be true as to her husband when she signed it was credible. Although Mrs. Zebrowski did know that the Trailer belonged to her husband prior to being conveyed to Mr. Verni, there was no testimony that she knew when the Trailer was conveyed to Mr. Verni. She was not involved in the subsequent transfer of the Trailer to Mr. Zebrowski's mother or the ultimate sale of the Trailer to a third party. Given Mrs. Zebrowski's lack of involvement in the transfers of the Trailer, the court cannot conclude that Mrs. Zebrowski had the requisite knowledge that the Affidavit was false at the time she signed it.

As the Trustee has failed to establish the Debtors knowingly made a false oath, the court need not address whether the Debtors possessed the requisite fraudulent intent when they signed the Affidavit.

11

## CONCLUSION

Based upon the foregoing, the Trustee has not proven by a preponderance of the evidence the element of knowledge on the part of the Debtors needed to sustain his § 727(a)(4)(A) cause of action.  Accordingly, the objection to discharge is overruled and denied, and the Complaint is dismissed.

| | |
|---|---|
| It is so ORDERED. | /s/ Robert E. Littlefield, Jr. |
| Dated: October 25, 2012 | Hon. Robert E. Littlefield, Jr. |
| Albany, New York | Chief United States Bankruptcy Judge |